

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

*Connecticut Financial Center*          *(203)821-3700*
*157 Church Street, 25th Floor*          *Fax (203) 773-5376*
*New Haven, Connecticut 06510*          *www.justice.gov/usao/ct*

October 4, 2024

Trent LaLima
BPS Lawyers
100 Pearl Street, 10th Floor
Hartford, CT 06106

Re:    *United States v. Porfiria Maribel* ~~Sanchez~~ *Ramos* ~~Sanchez~~
       Case No. 3:23-cr-00041 (KAD)

Dear Attorney LaLima:

This letter confirms the plea agreement between your client, Porfiria Maribel Sanchez ~~Ramos~~ (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

## THE PLEA AND OFFENSE

In consideration for the benefits offered under this agreement, Porfiria Maribel ~~Sanchez~~ Ramos agrees to plead guilty to Count Six of the superseding indictment, which charges her with conspiracy to encourage and induce, bring in, transport, and harbor aliens, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I).

The defendant understands that, to be guilty of this offense, the following essential elements must be satisfied:

1.  The defendant entered into an unlawful agreement with at least one other person to violate one of the four prohibited provisions of 8 U.S.C. § 1324(a), specifically:

    a.  to encourage and induce an alien to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry,

Trent LaLima, *Esq.*
Page 2

and residence was and would be in violation of law, for the purpose of commercial advantage and private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i);

b.  to knowingly bring to the United States an alien, knowing that the person was an alien, at a place other than a designated port of entry or a place other than as designated by the Secretary of Homeland Security, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(i);

c.  to transport and move an alien within the United States by means of transportation or otherwise, knowing and in reckless disregard of the fact that the alien had come to, entered, and remained in the United States in violation of law, in furtherance of such violation of law and for the purpose of commercial advantage and private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i); or

d.  to conceal, harbor, and shield from detection an alien, in any place, including any building and any means of transportation, knowing and in reckless disregard of the fact that the alien had come to, entered, and remained in the United States in violation of law, for the purpose of commercial advantage and private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i).

2.  The defendant knowingly and willfully became a member of the conspiracy.

## THE PENALTIES

### Imprisonment

This offense carries a maximum penalty of 10 years of imprisonment.

### Supervised Release

In addition, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should she violate any condition of supervised release, she may be required to serve a further term of imprisonment of up to two years per revocation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

### Fine

Under 18 U.S.C. § 3571, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense or twice the gross loss resulting from the offense; or (2) $250,000.

Trent LaLima, *Esq.*
*Page 3*

<u>Special Assessment</u>

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

The defendant further is obligated by 18 U.S.C. § 3014(a)(5) to pay an additional special assessment of $5,000, unless the Court finds that the defendant is indigent. The parties agree that the defendant is not indigent, and the defendant further agrees to pay this additional special assessment to the Clerk of the Court immediately after the defendant has satisfied all other court-ordered fines, orders of restitution, or any other court-ordered obligation related to victim compensation arising from the counts on which this additional special assessment is based.

<u>Restitution</u>

In addition to the other penalties provided by law, the Court also may order that the defendant make restitution under 18 U.S.C. § 3663, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663. The defendant agrees, pursuant to 18 U.S.C. § 3663(a)(3), that she will pay restitution to all victims of her criminal and relevant conduct, including the conduct described in the attached stipulation of offense conduct, and not merely to victims of the count to which the defendant is pleading guilty. Specifically, the defendant agrees to pay restitution pursuant to the terms of 18 U.S.C. § 1593. The defendant agrees to make such restitution to each victim for the "full amount of the victim's losses," as that term is defined in 18 U.S.C. § 1593. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

Regardless of restitution that may be ordered by the Court noted above, the defendant agrees to make restitution in the amount of $494,608 to the victims listed in paragraph 13 of the attached stipulation of offense conduct.

The defendant acknowledges that the property located at 74 Burnside Avenue, East Hartford, Connecticut, (the "Property"), which is owned by her spouse, Montiel Eduardo Bustos, was used to facilitate the criminal offense to which the defendant is pleading guilty. The defendant agrees to facilitate the liquidation of the Property, by the United States Attorney's Office's Financial Litigation Unit, which process the defendant agrees may begin immediately. The defendant represents that she has obtained the consent and agreement of her spouse and that they will execute the necessary documentation to consummate the sale and/or the transfer of title of the Property, and agree to maintain insurance for the Property, as well as to maintain the present condition of the Property until such sale or transfer occurs. The defendant will provide to the Government for review and approval a copy of the proposed closing statement prior to the sale of the Property, and understands that any net proceeds of any such sale will be turned over directly to the United States District Court Clerk's Office.

Trent LaLima, *Esq.*
*Page 4*

Interest, penalties and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (i) and § 3612(g). The defendant reserves the right to request that the Court waive interest and penalties as permitted by statute, and the Government reserves the right to oppose any such request.

**THE SENTENCING GUIDELINES**

Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guidelines determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that she has no right to withdraw her guilty plea if her sentence or the Guidelines application is other than she anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and her offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on her prompt notification of her intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) disclosing to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated

Trent LaLima, *Esq.*
*Page 5*

or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw her guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that she may not withdraw her plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

### Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

### Guidelines Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The defendant's base offense level under U.S.S.G. § 2L1.1 is 12. The offense level is increased by three levels because the offense involved between 6 and 24 aliens, pursuant to U.S.S.G. § 2L1.1(b)(2)(A). The offense level is increased by four levels because the offense involved the smuggling, transporting, or harboring of a minor who was unaccompanied by the minor's parent, adult relative, or legal guardian, pursuant to U.S.S.G. § 2L1.1(b)(4). The offense level is increased by two levels because the offense involved recklessly creating a substantial risk of death or serious bodily injury to another person, pursuant to U.S.S.G. § 2L1.1(b)(6). The offense level is increased by two levels because the defendant knew or should have known that at least one victim of the offense was a vulnerable victim, pursuant to U.S.S.G. § 3A1.1(b). Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 20.

It is the defendant's position that the offense level should be reduced by two levels pursuant to U.S.S.G. §3B1.2(b) because she was a minor participant in the criminal activity. The government's position is that the minor participant adjustment does not apply, and the government reserves the right to object to the applicability of this adjustment.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. Similarly, the parties agree that, based on an initial assessment, the defendant

Trent LaLima, *Esq.*
*Page 6*

does not qualify for a two-level reduction for "certain zero-point offenders" under U.S.S.G. § 4C1.1. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

The government's position is that the defendant's total offense level of 20, assuming placement in Criminal History Category I, would result in a Guidelines range of 33 to 41 months of imprisonment (sentencing table) and a fine range of $15,000 to $150,0000 (U.S.S.G. § 5E1.2(c)(3)). The defendant's position is that her total offense level of 18, assuming placement in Criminal History Category I, would result in a Guidelines range of 27 to 33 months of imprisonment (sentencing table) and a fine range of $10,000 to $100,0000 (U.S.S.G. § 5E1.2(c)(3)). Under either calculation, the defendant is subject to a supervised release term of 1 year to 3 years. U.S.S.G. § 5D1.2.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence. Moreover, the defendant reserves the right to argue that a fine is not appropriate in this case, and the Government reserves the right to argue that a fine is appropriate in this case.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that she will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

<u>Information to the Court</u>

The parties reserve their rights to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

The defendant acknowledges and agrees that she is knowingly, intelligently, and voluntarily waiving the following rights:

<u>Waiver of Trial Rights and Consequences of Guilty Plea</u>

The defendant understands that she has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent her.

Trent LaLima, *Esq.*
*Page 7*

The defendant understands that she has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against her, the right not to be compelled to incriminate herself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in her defense. The defendant understands that by pleading guilty she waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if she pleads guilty, the Court may ask her questions about each offense to which she pleads guilty, and if she answers those questions falsely under oath, on the record, and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making false statements.

Waiver of Statute of Limitations

The defendant agrees that, should the conviction following the defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances she is entitled to challenge her conviction. By pleading guilty, the defendant waives her right to appeal or collaterally attack her conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims the defendant might raise, the defendant waives the right to challenge the conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant acknowledges that under certain circumstances, the defendant is entitled to challenge her sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, if that sentence does not exceed 41 months of imprisonment, 3 years of supervised release, a $5,100 special assessment, a $150,000 fine, and restitution in the amount of $494,608, even if the Court imposes such a sentence based on an analysis different from that specified above. Similarly, the defendant will not challenge any

Trent LaLima, *Esq.*
Page 8

condition of supervised release imposed by the Court for which she had notice and an opportunity to object. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

<u>Waiver of Challenge to Plea Based on Immigration Consequences</u>

The defendant understands that pleading guilty may have consequences with respect to her immigration status if the defendant is not a citizen of the United States. Under federal law, non-citizens are subject to removal for a broad range of crimes, including the offense(s) to which the defendant is pleading guilty. Indeed, because the defendant is pleading guilty to conspiring to bring in and harbor aliens, removal is presumptively mandatory. Likewise, if the defendant is a naturalized citizen of the United States, pleading guilty may result in denaturalization and removal. Removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. The defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is automatic removal from the United States.

The defendant understands that she is bound by the guilty plea regardless of the immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to the guilty plea and to the sentence based on those consequences, and agrees not to seek to withdraw the guilty plea, or to file a direct appeal or any kind of collateral attack challenging the guilty plea, conviction, or sentence, based on the immigration consequences of the guilty plea, conviction, or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

**ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA**

The defendant acknowledges that she is entering into this agreement and is pleading guilty freely and voluntarily because the defendant is guilty. The defendant further acknowledges that she is entering into this agreement without reliance upon any discussions between the Government and the defendant (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges her understanding of the nature of the offense to which the defendant is pleading guilty, including the penalties provided by law. The defendant also acknowledges her complete satisfaction with the representation and advice received from her undersigned attorney. In open court on August 16, 2024, the defendant waived a potential conflict of interest of her undersigned counsel. The

Trent LaLima, *Esq.*
*Page 9*

defendant and her undersigned counsel are unaware of any additional conflicts of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that she is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights the defendant may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to her with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

## COLLATERAL CONSEQUENCES

The defendant understands that she will be adjudicated guilty of each offense to which the defendant has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and, in some states, the right to vote. Further, the defendant understands that if she is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which the defendant is licensed, or with which the defendant does business, as well as any current or future employer of the fact of her conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of the defendant's participation in the labor trafficking and alien smuggling offenses that form the basis of the superseding indictment in this case. After sentencing, the Government will move to dismiss Counts 1, 3, and 8 through 10 of the superseding indictment, with respect to the defendant, because the conduct underlying the dismissed counts will have been taken into account in determining the appropriate sentence.

The defendant understands that if, before sentencing, she violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government

Trent LaLima, *Esq.*
*Page 10*

may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw the guilty plea.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

ANGELA M. KRULL
SHAN PATEL
ASSISTANT UNITED STATES ATTORNEYS

The defendant certifies that she has read this plea agreement letter and its attachment(s) or has had it read or translated to her, that she has had ample time to discuss this agreement and its attachment(s) with counsel and that she fully understands and accepts its terms.

PORFIRIA MARIBEL RAMOS SANCHEZ          10-4-24
The Defendant                           Date

I have thoroughly read, reviewed, and explained this plea agreement and its attachment(s) to my client who advises me that she understands and accepts its terms.

TRENT LALIMA, ESQ.                      10/4/24
Attorney for the Defendant              Date

Trent LaLima, *Esq.*
*Page 11*

## STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to the superseding indictment:

1. From at least 2001 until approximately 2023, RAMOS knowingly conspired with MARIA DEL CARMEN SANCHEZ POTRERO, APOLINAR FRANCISCO PAREDES ESPINOZA, and others in the United States and Mexico to:

    a. encourage and induce aliens to come to, enter, and reside in the United States, knowing and in reckless disregard that it would be in violation of law, for the purpose of commercial advantage and private financial gain;

    b. knowingly bring aliens to the United States, knowing that the persons were aliens, at a place other than a designated port of entry or a place other than as designated by the Secretary of Homeland Security;

    c. transport and move aliens within the United States by means of transportation or otherwise, knowing and in reckless disregard of the fact that the aliens had come to, entered, and remained in the United States in violation of law, for the purpose of commercial advantage and private financial gain; and

    d. conceal, harbor, and shield from detection aliens in any place, including any building and any means of transportation, knowing and in reckless disregard of the fact that the aliens had come to, entered, and remained in the United States in violation of law, for the purpose of commercial advantage and private financial gain.

2. Starting no later than 2001, RAMOS and her coconspirators offered to facilitate the aliens listed below in paragraph 13 ("the aliens"), all Mexican nationals then living in Mexico, to enter the United States illegally.

3. RAMOS and her coconspirators told the aliens that they would owe a set fee payable after they obtained work in the United States in exchange for illegally smuggling them into the United States.

4. RAMOS and her coconspirators required the aliens to provide the deed of a property belonging to a friend or family member, as collateral for the debt they owed in exchange for being illegally smuggled into the United States.

5. RAMOS and her coconspirators arranged for the aliens to be illegally smuggled from Mexico into the United States at a place other than a designated legal port of entry. RAMOS and her coconspirators coordinated with smugglers, often referred to as "coyotes," who physically transported the aliens from Mexico into the United States.

Trent LaLima, *Esq.*
*Page 12*

The transportation of the aliens across the border from Mexico to the United States sometimes involved a substantial risk of death or serious bodily injury to the aliens.

6. RAMOS and her coconspirators arranged for the transport of the aliens to Connecticut, where they sometimes lived in a residence owned by RAMOS's spouse and/or at residences with her coconspirators. For example, after the aliens were illegally smuggled across the border into the United States, RAMOS and her coconspirators coordinated with individuals who drove the aliens from the United States border with Mexico to Connecticut. The transportation of the aliens within the United States sometimes involved a substantial risk of death or serious bodily injury to the aliens. In addition, when the aliens were in Connecticut, RAMOS and her coconspirators arranged for them to be housed in residences that concealed, harbored, and shielded them from detection.

7. RAMOS and her coconspirators told the aliens, after they arrived in the United States, that the debt they owed was significantly higher than had been agreed upon when the aliens were still in Mexico. RAMOS and her coconspirators also required the aliens to pay other fees, including but not limited to interest on their debt and rent.

8. RAMOS and her coconspirators assisted the victims in obtaining employment illegally, including by providing false and fraudulent identification documents to the victims that misrepresented their legal authority to work in the United States.

9. RAMOS and her coconspirators required the victims to pay them from their wages, and despite the victims doing so, the defendants continued to demand money without substantially reducing the victims' alleged debt in accordance with the payments.

10. When the victims failed to pay RAMOS, or paid less than the required monthly amounts, RAMOS and her coconspirators encouraged the victims to work more and threatened serious harm to the victims and other persons, including by threatening to obtain the property that the victims were forced to offer as collateral.

11. RAMOS and her coconspirators sometimes forced victims to provide uncompensated labor for the defendants, including by doing unpaid household and yard work.

12. RAMOS coordinated with individuals who wired proceeds of the conspiracy to individuals in Texas and Mexico.

13. The victims referred to in the previous paragraphs include, but are not limited to:

    a. L.C.
    b. O.C.
    c. J.M.
    d. M.C.
    e. A.M.

Trent LaLima, *Esq.*
*Page 13*

        f.   J.S.
        g.   J.C.
        h.   J.P.
        i.   H.C.
        j.   O.C.2
        k.   P.M. (a minor when smuggled)
        l.   R.C.
        m.   E.J.
        n.   A.J. (a minor when smuggled)
        o.   A.Z.
        p.   A.Z.2
        q.   F.E., and
        r.   U.E

      This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

PORFIRIA MARIBEL SANCHEZ ~~RAMOS~~
The Defendant

ANGEL M. KRULL
SHAN PATEL
ASSISTANT U.S. ATTORNEYS

TRENT LALIMA, ESQ.
Attorney for the Defendant

Trent LaLima, *Esq.*
*Page 14*

## RIDER CONCERNING RESTITUTION

The Court may order that the defendant make restitution under 18 U.S.C. § 3663 as follows:

1.  If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

    A.  Return the property to the owner of the property or someone designated by the owner; or

    B.  If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

        The greater of -
        (I) the value of the property on the date of the damage, loss, or destruction; or

        (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2.  In the case of an offense resulting in bodily injury to a victim –

    A.  Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

    B.  Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

    C.  Reimburse the victim for income lost by such victim as a result of such offense.

3.  In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services.

4.  In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

In addition, pursuant to an agreement between the parties and the definitions listed in 18 U.S.C. §§ 1593 and 2259, the Court shall direct the defendant to pay the full amount of each victim's losses, including any costs incurred for:

    (A)     medical services relating to physical, psychiatric, or psychological care;

    (B)     physical and occupational therapy or rehabilitation;

    (C)     necessary transportation, temporary housing, and child care expenses;

Trent LaLima, *Esq.*
*Page 15*

(D)    lost income;

(E)    reasonable attorneys' fees, as well as other costs incurred;

(F)    any other relevant losses incurred by the victims; and

(G)    the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. 201 *et seq.*).

Restitution is payable immediately unless ordered otherwise by the Court. In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution also may result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614. Finally, the order of restitution has the effect of a civil judgment against the defendant.